FRUGÉ, Judge.
This is an action for personal injuries arising out of a fall in a doorway. Plaintiff has appealed from a jury verdict in favor of defendants. There is no dispute as to the facts. The fall occurred in the doorway of the premises of the defendants, B. J. Cart and B. J. Cart, Jr. The plaintiff, LeBouef, had purchased two orders at the defendants’ store. These were placed in two different bags because she was ordering for two different people. With the bags in arm, she proceeded to the glass door exit of the defendants’ establishment and when she reached the door, which opened outward, she proceeded to push on the door with her elbow and shoulder and while she was in this position, with the door slightly ajar and opening, a young lad of about 14 years rushed up from the outside and pulled the door open and Mrs. LeBouef immediately fell down in the door *798 way. Upon falling she broke a bottle which was in one of the bags and severely cut one of her arms.
The plaintiff alleged negligence based on the defective or hazardous condition created by the door. The store had two doors adjacent to each other, both opening the same way and only opening one way. These are clear glass doors bound by aluminum frames. The doors were controlled by a damper which was a mechanical device which had a spring inside a cylinder which held the door shut. It would take a certain amount of force to push the door open because the person opening would have to push against the resistence of the spring in the cylinder, but after the door was opened the door would automatically shut by the pull of the spring, but it would not slam because the device also incorporated a hydraulic system which slowed down the return of the door to prevent the slam.
The evidence introduced at the trial was very clear that there was no defect in the device and that this was the type of device normally used on this particular type door. The man who installed these doors and the dampers testified that the defendants had had no trouble with these doors nor with the dampers except on one occasion when one of the hydraulic cylinders leaked and he replaced the whole mechanism on that particular door. He also testified that he never heard of any of these type springs breaking in any door. He further stated that the amount of resistence in these springs was pre-set and they were set according to the force necessary to push the door open, that in this particular case they were set with a number four closure since this was a closure strong enough to keep the door shut, but would still permit children and old women to open the door when pushed upon.
There is no evidence introduced in this trial that there was any defect in the door or a defect in the cylinder. Plaintiff has brought this case upon the sole basis that the doors created a hazardous condition, but he has failed to introduce any evidence that doors of this type are inherently dangerous or that these doors were particularly dangerous and defendants knew of the danger and had a duty to warn customers of this. Of course, defendants did know that these doors might open rather suddenly when force was applied from both sides and testified that many people open these doors in a similar fashion which Mrs. LeBouef used to open the door.
There is no testimony that this glass door was anyway blocked off by any sort of poster, papers, etc. From the testimony given at the trial it is apparent that the plaintiff’s vision was unobstructed. Actually, the sole basis for plaintiff’s suit in negligence is that it was reasonably foreseeable that someone would be pushing on the door at the exact same time that someone would open the door from the outside and defendants had a duty to warn each customer of this danger. Be that as it may, the fact that there has been no accident in the past with these particular doors would indicate that even if this incident of persons opening the door simultaneously occurred before there had been no one else injured so it would seem from this that the door is apparently not dangerous and that the reasonable persons would approach the door, as any door, with a degree of caution and be on the proper lookout for people coming up from the other side of the door.
The rule that is applicable in situations like this is that the occupier of the premises owes to the patrons of his business a duty to avoid reasonable foreseeable danger. He must rid his premises of hidden dangers which are not known to his patrons or would not be observed and appreciated by them in the use of ordinary care and if the condition exist uncorrected he must give a warning. An occupier is not the insurer of everyone who comes onto his premises and he is permitted to rely on the fact that the average person coming into his business would use some degree of caution in looking out for his own welfare in approaching obvious hazards. “The in *799 vitee assumes all normally observable or ordinary risk attendant upon the use of the premise.” Levert v. Travelers Indemnity Co., 140 So.2d 811 (La.App.3rd Cir. 1962).
There is no evidence that doors of this sort are inherently dangerous. The only attempt that plaintiff has made to prove negligence is based upon the fact that these doors can open rather spontaneously when pressure is applied to both sides simultaneously. In normal use the quickness in which the door opens is determined by the setting of the damper device and in this particular case it was set at an amount of resistence for normal use, the normal use being that it could be opened by sizeable children and probably weak old ladies or weaker old men. Obviously this is necessary because in a store of this type if these doors were set with so much resistence that they couldn’t be opened by young children and older people then the proprietor would have to constantly abandon his tasks to open the door for half of the people who came in and out. There is no testimony that these doors were in any way obstructed so that Mrs. LeBouef couldn’t see through the doors. It is evident from the record that she failed to use the necessary amount of caution in approaching the door, and if she had been on the proper lookout she could have seen the individual approaching from the outside and could have maintained her balance. It is obvious in this situation that she was putting so much weight against the door that she could not control herself after the resistence was removed by the additional force.
In his brief plaintiff points out that the sudden opening of the door could have been avoided by adding an additional damper on the door which would hydraulically control the door when moving in either direction, but plaintiff has not introduced any evidence whatsoever in the trial court upon this point.
We cannot find any error with the jury verdict.
For the foregoing reasons, the judgment of the trial court is affirmed at plaintiff-appellant’s cost.
Affirmed.